FILED
SUPERIOR COURT
OF GUAM

2021 MAR -8 PM 3: 24

CLERK OF COURT

By:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM,** | Case No. CF0577-19<br>GPD Police Report No.: 19-29269 |
| vs. | |
| **TIMOTHY MICHAEL GAY,**<br>DOB: 02/09/1994 | **DECISION AND ORDER**<br>(Defendant's Motion to Suppress Statements<br>and Physical Evidence) |
| _____ Defendant. | |

## INTRODUCTION

This matter came before the Honorable Maria T. Cenzon on December 7, 2020, upon the submission of Defendant Timothy M. Gay's ("Defendant") Motion to Suppress Statements and Physical Evidence. Alternate Public Defender Brycen J. Breazeale represents Defendant, and Assistant Attorney General Brendlynn Joseph represents the People of Guam ("the People"). All parties were present at the hearing via Zoom platform as authorized by the Guam Supreme Court in Administrative Order No. ADM No. 001-20 (July 1, 2020). Following the hearing on the Motion, the court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001 and CVR 7.1(e)(6)(A) of the Local Rules of the Superior Court of Guam. Having duly considered the written briefs and the record on file with the Court, the arguments presented at the Motion Hearing, and the applicable statutes and case law in the instant case, the Court **DENIES** the Motion to Suppress physical evidence, the statements

made at the residence, the statements made at the Criminal Investigation Section ("CIS" or "CID").

## BACKGROUND

On November 5, 2019, a Grand Jury returned a true bill indicting Defendant with the following charges: (1) Third Degree Robbery (As a Third-Degree Felony); (2) Assault (As a Misdemeanor); and (3) Theft (As a Misdemeanor). The charges in the Indictment are based on the alleged facts that Defendant had been a patron at Lucky Land Game Room ("Game Room") in Dededo on the evening of October 8, 2019. *Mag. Compl.* at p. 3. While at the Game Room, Defendant scaled the wall of the attendant's box, demanded money from the attendant, and struck her with his fists several times before fleeing with several hundred dollars. *Id.* After receiving surveillance footage, Guam Police Department ("GPD") officers identified Defendant as the individual from the incident at the Game Room and apprehended him at his mother's residence on October 25, 2019. *Id.* While the officers apprehended Defendant, he made incriminating statements relating to the clothing he wore on the night of the Game Room incident. *Mot.* at p. 2. The officers asked Defendant and his mother for their consent to search the residence. Defendant and his mother then gave their consent, and both signed the Consent to Search Form. *Opp'n.* at p. 2–3. During the search, the officers recovered the clothes Defendant allegedly wore during the incident at the Game Room according to the surveillance footage. *Opp'n.* at p. 3. Defendant was then transported to CIS where he made verbal and written incriminating statements. *Mot.* at p. 3.

On August 14, 2020, Defendant filed a Motion to Suppress Statements and Physical Evidence ("Motion" or "Motion to Suppress") on the grounds that the clothes recovered were obtained in violation of his Fourth Amendment rights against unreasonable search and seizure,

and the statements made were obtained in violation of his Fifth Amendment rights against self-incrimination. The People filed an Opposition to Defendant's Motion ("Opposition") on October 21, 2020. The Motion was heard via Zoom on December 7, 2020.

The testimony of the Defendant and his mother Kathleen Gay were presented at the hearing of the Motion, in addition to the testimony of the following GPD police officers: Detective E.A. Barcinas ("Barcinas"), Detective C.A. Dangan ("Dangan"), and Detective A. R. Santos ("Santos"). *Min Entry* (Dec. 7, 2020). As to the Defendant's statements while at the residence, Barcinas testified that Defendant "was verbally advised of his *Miranda* rights" by Dangan. *Min. Entry* at 2:46:51 PM (Dec. 7, 2020). Officer Dangan testified that "[Defendant] understood his rights and he agreed to talk to the officers, he waived his rights." *Min. Entry* at 3:26:02 PM (Dec. 7, 2020). Officer Santos also testified that "I formally advised him of his rights," and "he agreed to questioning." *Min. Entry* at 3:46:37 PM (Dec. 7, 2020). Officer Santos testified further that, prior to searching the residence, he recalls that "[Defendant's] mom came out kinda, excuse me, crying and asking him to the effect of 'Son, son, why did you do it? Why did you do it?' I remember him telling his mom, 'Mom, I'm sorry. I did it because my family needed me to take care of them, or something to that effect.'" *Min. Entry* at 3:55:50 to 4:00:26 PM (Dec. 7, 2020). See also, Exhibit 8 to *People's Exhibit List* (Dec. 4, 2020).

As to the clothes, Santos testified that "[Defendant] pointed them out and with approval with consent to confiscate." *Min. Entry* at 3:53:43 PM (Dec. 7, 2020). Barcinas also testified that "[Defendant] was the one that actually got them for us." *Min. Entry* at 2:50:52 PM (Dec. 7, 2020). Defendant testified that "they kept telling me they're going to search your house," and that "they had them going through my clothes trying to match." *Min. Entry* at 5:07:21 PM (Dec. 7, 2020).

## DISCUSSION

**A. The warrantless search and seizure of Defendant's clothes worn the on night of the alleged robbery were lawful under the Fourth Amendment.**

Defendant argues that the clothing obtained from the residence should be suppressed because it was seized during a warrantless search and without consent. *Mot.* at p. 6. The People contend that the search and seizure of the clothes was lawful under the consent exception to a warrantless search. *Opp'n.* at p. 5. Although not raised by the People, based on the evidence adduced at the suppression hearing, the Court finds that the search was made pursuant to a lawful arrest.

**1.      Defendant and Defendant's Mother consented to the search of the residence.**

Generally, searches and seizures without a proper warrant are presumptively unreasonable; however, the presumption is subject to a few exceptions including consent to search. *People v. Cundiff*, 2006 Guam 12 ¶ 42. The government bears the burden of proving by a preponderance of the evidence that consent was voluntary, and voluntariness is based on the totality of the circumstances. *People v. Chargualaf*, 2001 Guam 1 ¶ 25. Factors in determining voluntariness include: (1) whether the defendant was detained and the length of time of the questioning; (2) whether the defendant was threatened or intimidated by the police; (3) whether the defendant relied on misrepresentations or promises made by the police; (4) whether the person was in custody or under arrest when the consent was given; (5) whether the person was in a public or a secluded place; and (6) whether the defendant objected to the search. *Id.* Additionally, the United States Supreme Court has noted that consent to search the premises without a warrant may be given by the person whose property is searched, or a third party with authority over the premises. *Id.; Illinois v. Rodriguez*, 497 U.S. 177, 179 ¶ 2 (1990).

Here, Defendant claims that his failure to immediately consent to the search of the residence constitutes a refusal. *Mot.* at p. 6. The People claim that the officers asked both Defendant and his mother if they consent to the search of the residence without coercion, and that both acknowledged and signed the Consent to Search Form. *Opp'n.* at p. 5. In determining whether Defendant's consent was voluntary the Court takes each of the *Chargualaf* factors in turn.

### 1. Defendant was detained for a reasonably necessary time under the circumstances.

Investigative questioning regarding criminal activity does not, in itself, implicate the Fourth Amendment. *Chargualaf* ¶ 20. Brief detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). *See also, People v. Taman*, 2013 Guam 22 ¶ 21.

Here, Defendant argues that officers extensively pressured him to implicate himself without formally arresting him or reading him his *Miranda* rights. *Mot.* at p. 2. The People argue that while at the residence, Defendant was apprised of the nature of the officers' presence and Dangan verbally advised Defendant of his rights. *Opp'n.* at p. 2. Defendant verbally acknowledged his rights, waived them, and agreed to speak to the officer about the Game Room incident. *Min. Entry* at 3:26:52. At the motion hearing, Defendant's mother testified that officers were talking to Defendant for "approximately an hour." *Min. Entry* at 2:22:06 PM (Dec. 7, 2020).

The Court notes that based on the officers' investigation and surveillance footage, they had the requisite reasonable suspicion to believe Defendant had committed the alleged robbery

in which they may question Defendant. Defendant was apprised of the nature of the officer's presence,[1] was advised of his rights,[2] and agreed to speak to the officers.[3] According to Defendant's mother's testimony, Defendant was questioned for approximately an hour,[4] however, while Defendant was questioned, he was allowed to leave the patrol car several times[5] and was offered food.[6] Based on these circumstances, the Court concludes that because Defendant was allowed to leave the patrol vehicle several times and was offered food and the ability to smoke and exit the vehicle throughout the duration of questioning, the length of questioning was not beyond what was reasonably necessary.

## 2. Defendant was not threatened or intimidated by the officers.

Defendant argues that because he did not immediately consent to the search, it constitutes a refusal. *Mot.* at p. 6. The People assert that Officer Barcinas inquired if Defendant and his mother consented to a search of the residence. Both acknowledged their consent and signed the Consent to Search Form. *Id* at ¶ 15. The search was then conducted with Defendant's help as he led the officers to the clothing he wore on the night of the incident. *Id.*

Defendant does not specifically allege that any GPD officer threatened or intimidated him, except during the hearing on the Motion. The Motion contends that: "At the [Gay] residence, Officers asked if Mr. Gay was home. After learning he was inside the residence with his young niece, Officers entered the residence and asked to speak with Mr. Gay. Mr. Gay exited the residence. He was immediately questioned regarding the alleged game room robbery. Officers then placed Mr. Gay in the patrol car which was parked in the driveway of the

---

[1] *Min. Entry* at 3:45:03 PM.
[2] *Id.* at 4:13:52 PM.
[3] *Id.* at 3:26:52 PM
[4] *Id.* at 2:22:06 PM.
[5] *Id.* at 3:50:30 PM.
[6] *Id.* at 3:15:54 PM.

residence." *Mot.* at p. 3. In marked and significant contrast, Mr. Gay testified during the suppression hearing that an officer "grabbed me and had me up against the wall, they patted me down, they removed my [inaudible] and immediately placed me in cuffs." *Min. Entry* at 4:39:40 to 4:40:47.

The Court finds Defendant's testimony during the hearing to be incredible. Defendant argues in his Motion that officers displayed a "show of force" based only upon the number of police officers who were present at the residence (including those officers searching the vehicle pursuant to a search warrant), rather than the physical restraints which Defendant later testified to during the hearing. If officers had conducted themselves in this manner, Defendant would have included such information in his moving papers and his mother Kathleen would have testified to this as well during the hearing. The Court finds, instead, that Defendant was not intimidated or threatened by the officers as he testified during the hearing. Rather, Defendant's statements were the result of his apparent remorse when, while at the home, his mother asked him why he committed the offense. By the time such statements were made he had been administered his *Miranda* warnings, acknowledged them, agreed to speak with officers and consented to the search of the residence by ultimately signing the Consent to Search Form and assisting the officers during the search.

### 3. Nothing indicates that Defendant relied on misrepresentations or promises made by the officers.

Here, no facts in the written briefs and the record on file with the Court or the arguments presented at the Motion Hearing indicate a misrepresentation or promise made by the officers in exchange for Defendant's consent to search the residence. This contention is discussed further, below, in reference to statements made while at CID.

//

### 4. Defendant was in custody when he consented to the search; however, he had been given his *Miranda* warnings.

A seizure does not occur simply because a police officer approaches an individual and asks a few questions, as long as the officer does not convey a message that compliance with his request is required. *Chargualaf* ¶ 20. "A seizure occurs where a reasonable person would not believe he is free to leave. A person is deemed seized for the purpose of the Fourth Amendment if a police officer has, by means of physical force or show of authority, restrained the person's freedom to walk away." *Chargualaf* ¶ 21. The Court must examine, based on the totality of the circumstances, whether a reasonable person would have felt that he or she was free to leave in this situation and terminate the encounter. *Id.* "If the person would feel free to leave, then the continued presence of the person is not a seizure; rather, it is a consensual encounter with the police that does not implicate the Fourth Amendment." *Id.* Moreover, "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *People v. Torre*, 2019 Guam 9 ¶ 10 (quoting *Farata*, 2007 Guam 8 ¶ 35).

A non-exhaustive list of factors relevant to the analysis of whether a reasonable person would have felt at liberty to terminate an interrogation "include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id.* (quoting *Howes v. Fields*, 565 U.S. 499, 509 (2012) (citations omitted)).

Defendant argues that the following factors indicate that he was in custody at the time consent was given: (1) the questioning began before he was placed in the patrol vehicle, (2) the

officers' show of force, (3) the questions asked were incriminating in nature, (4) six hours had passed, (5) and his subsequent transport to CIS. *Mot.* at p. 7. The People argue Defendant was apprised of the nature of the officers' presence upon their arrival; Defendant was advised of his rights, he verbally acknowledged his rights, waived them, and agreed to speak to the officers about the Game Room incident, and Defendant consented to the search by acknowledging and signing the Consent to Search Form. *Opp'n.* at p. 5-6.

The Court finds that Defendant was in custody when consent was given. Applying *People v. Torre*, the Court agrees: at least three officers were in close proximity to or always nearby the Defendant; he was placed into a patrol vehicle and not free to leave the residence; and he was never left alone during the encounter. At the suppression hearing, Defendant contended that he was also handcuffed; however, the Court has already rejected this claim. This testimony is contradicted by his mother's earlier testimony that Timothy was not immediately placed into handcuffs and that "he was out talking to the officers by the car." *Min. Entry at* 2:21:23. He was then put into the police vehicle "after some time." *Id.*

Barcinas testified that Defendant was placed in the patrol vehicle because he was getting bitten by mosquitos as he stood outside the residence and that Defendant was allowed to leave the patrol vehicle several times. Kathleen also testified he was brought food and water throughout the duration of questioning and also left the police vehicle in order to smoke. While officers were at the residence, they were also awaiting the issuance of a search warrant in order to search a vehicle at the residence. Once other officers arrived with the search warrant, the vehicle was searched pursuant to the warrant. The securing of the search warrant and the execution thereof contributed to the lapse in time between the officers' arrival at the residence and Defendant's transport to CID. There was no explanation given for why a search warrant

was obtained for the vehicle but not the home. However, despite that Defendant was "in custody" while at the residence, the Court finds that he was given his *Miranda* warnings prior to questioning.

### 5. Whether Defendant was in a public or a secluded place

It is undisputed that the search occurred at the residence that Defendant shared with his mother. The Court concludes that the search occurred in a private residence.

### 6. Defendant did not object to the search.

Defendant argues that he did not immediately give consent, which constitutes a refusal. *Mot.* at p. 6. However, the People argue that both Defendant and his mother acknowledged their consent and signed the Consent to Search Form. During the hearing on the motion, the following testimony was presented: upon arrival at the residence, Dagan administered Miranda warnings to the Defendant, which was witnessed by Barcinas, who testified that he heard Defendant verbally acknowledge his rights as well as non-verbally indicating asset by nodding his head. Defendant's consent was also reflected in his conduct of leading the officers to the clothes he wore the night of the Game Room incident. *Opp'n.* at p. 5. This argument is consistent with Barcinas's and Santos's testimony.

In addressing the search of a residence, the Guam Supreme Court noted that "common authority rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that others have assumed the risk that one of their number might permit the common area to be searched." *People v. Quintanilla*, 2020 Guam 8 ¶ 28 (quoting *United States v. Matlock*, 415 U.S. 164).

The Court notes that Defendant did not object to the search, and that both Defendant's and his mother's consent were voluntarily given. The Court finds that while Defendant's mother's consent can only reach common areas of the residence, Defendant's consent allowed the officers to conduct the search of his room. Considering the totality of the circumstances and the six factors outlined in *Chargualaf*, the Court finds that Defendant's consent was voluntarily given, and the Defendant's clothes allegedly worn on the night of the Game Room incident were lawfully seized.

## B. Fifth Amendment Right Against Self-Incrimination

The Court now turns to the question of whether statements made by Defendant were coerced in violation of the Fifth Amendment. Testimonial evidence obtained in a custodial interrogation is inadmissible unless a defendant waived the privilege against self-incrimination. *People v. Sangalang*, 2001 Guam 18 ¶ 12. "To be valid, the waiver must be voluntary, knowing, and intelligent." *Id.* "The voluntary, knowing, and intelligent nature of a *Miranda* waiver is to be gleaned from the totality of the circumstances, which includes 'the background, experience and conduct of the defendant.'" *People v. Angoco*, 2007 Guam 1 ¶ 37 (quoting *Sangalang*). The Supreme Court of Guam held that the issue of whether a *Miranda* waiver is voluntary, therefore, valid depends on "two distinct dimensions":

> (1) The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.
> (2) The waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*People v. Farata*, 2007 Guam 8 ¶ 46. In determining whether Defendant's waiver was voluntary, the Court takes the "two distinct dimensions" by the Supreme Court in turn.

//

//

### 1. Defendant's statements made at the residence were lawfully obtained under the Fifth Amendment because his waiver was made knowingly, intelligently, and voluntarily.

#### a. *Defendant's waiver was made freely without intimidation, coercion, or deception.*

Defendant argues that the officers' show of force, incriminating nature of the questions asked, the duration of questioning that led to his arrest, and his subsequent transport to CIS would lead a reasonable person to believe he was not free to leave and that his incriminating statements made at the house were coerced. *Mot.* at p. 7. The People argue that Defendant's waiver was voluntary as the officers apprised Defendant of the nature of their presence and Officer Dangan verbally advised him of his *Miranda* rights. *Opp'n.* at p. 6. Defendant verbally acknowledged his rights, indicating that he understood and waived his rights. *Id.* Defendant then agreed to speak to the officers about the Game Room incident. *Id.*

In determining whether a reasonable person would feel free to leave and cease questioning, the court may consider the location of the questioning, its length, statements made during the questioning, and the suspect's release at the end of questioning. *Torre*, 2019 Guam 9 ¶ 12. The Court notes the factors weighing in favor of coercion include that Defendant was questioned in a patrol vehicle outside his mother's residence,[7] three officers were present, questions concerning the Game Room incident were being asked, and the length of the

---

[7] *Min. Entry* at 3:15:34 PM (Dec. 7, 2020).

questioning allegedly lasted approximately six (6) hours.[8] In contrast, the factors weighing against coercion include Defendant was appraised of the nature of the officer's presence upon their arrival;[9] Defendant was advised of his *Miranda* rights;[10] Defendant acknowledged that he understood his rights, waived them, and agreed to speak with the officer's about the Game Room incident;[11] Defendant was offered food during the questioning;[12] and Defendant was allowed to leave the patrol vehicle several times.[13] Based on these factors, the Court finds that, even though Defendant was "in custody," he was properly advised of his *Miranda* rights. Therefore, his statements were legally obtained.

> b. *Defendant's waiver was made with full awareness of the nature of the right being abandoned and its consequences.*

The People proffer as additional support for the validity of the statements, that Defendant's immediate and excited oral statement to officers regarding the Game Room incident was in direct response to his mother's question ("Son, why did you do it, they just want to know"), and reflects his voluntary and deliberate choice to waive his *Miranda* rights. *Opp'n.* at p. 7. The Court finds that Defendant's conduct reflects his awareness of his rights, the waiver of such rights and the consequences of such waiver. As to Defendant's statements made at the residence, the Court finds that, under the circumstances, Defendant's waiver was valid and his Defendant's statements to police officers at the home were not obtained in violation of his constitutional rights.

**2. Defendant's statements made at CIS were not the result of deception.**

---

[8] *Mot.* at p. 7.
[9] *Min. Entry* at 3:34:03 PM.
[10] *Id.* at 4:13:52 PM.
[11] *Id.* at 3:26:52 PM.
[12] *Id.* at 3:15:54 PM.
[13] *Id.* at 3:50:30 PM.

*a. Defendant's waiver was valid despite purported claims of promises of leniency by police officers.*

Defendant argues that his statements were coerced when officers made promises and implied that if he provided a statement admitting guilt, it may help him get charges reduced. Specifically, Defendant claims that "Defendant's statements were coerced when Officers made promises that could not be seen through and coached the Defendant through a statement he was led to believe would help him best navigate the allegations against him." *Mot.* at p. 9. Defendant claims that the Officers deceived the Defendant by making him believe that the prosecution would be more lenient if he provided a statement admitting guilt. *Id.* In support of this proposition, Defendant cites to *Malloy v. Hogan*, 84 S.Ct. 1489, 378 U.S. 1 (1964), which is factually inapposite to the case at bar as it does not involve any promises allegedly made to the defendant in exchange for leniency.

The Guam Supreme Court has not addressed this issue, coming closest to it in the case of *People v. Hualde*, which does not apply here because the actor in that case was not a public official such as a police officer or prosecutor. The Court finds persuasive case law from New York on this issue. In *People v. Black,* 172 A.D. 3d 895, 896, 100 N.Y.S.3d 77, 79 (2019), a defendant claimed that his incriminating statements were involuntarily made due to promises of leniency purportedly made by police officers to the defendant. In affirming his conviction and rejecting the defendant's claims that soliciting the statements was in violation of his *Miranda* rights, the New York Appellate Court reasoned as follows:

> On a motion to suppress a statement on the ground that it was involuntarily made, the People bear the burden of proving voluntariness beyond a reasonable doubt (see People v. Thomas, 22 N.Y.3d 629, 641, 985 N.Y.S.2d 193, 8 N.E.3d 308; People v. Guilford, 21 N.Y.3d 205, 208, 969 N.Y.S.2d 430, 991 N.E.2d 204; People v. Anderson, 42 N.Y.2d 35, 38–39, 396 N.Y.S.2d 625, 364 N.E.2d 1318). The defendant contends that he was deceived by the police into making a

statement by, among other things, promises of leniency and misstatements as to the evidence the police already possessed. "[N]ot all deception of a suspect is coercive" (People v. Thomas, 22 N.Y.3d at 642, 985 N.Y.S.2d 193, 8 N.E.3d 308). Rather, where deception has been employed, the People must prove, under the totality of the circumstances—including the means employed and the vulnerability of the defendant—that the defendant's statements were the product of the defendant's own choice, or, put otherwise, that his or her will was not overborne (see id. at 641–642, 985 N.Y.S.2d 193, 8 N.E.3d 308). In this respect, "generalized promises of leniency do not create a substantial risk that a defendant might falsely incriminate himself or herself" (People v. Plass, 160 A.D.3d 771, 773, 74 N.Y.S.3d 587; see People v. Lugo, 60 A.D.3d 867, 868–869, 874 N.Y.S.2d 587). Here, the comments to the defendant by the police did not create a danger of a false confession, and they were not of such a nature that they would have "overborne" the defendant's will (People v. Plass, 160 A.D.3d at 773, 74 N.Y.S.3d 587; see People v. Woods, 93 A.D.3d 1287, 1288, 940 N.Y.S.2d 747; People v. Lugo, 60 A.D.3d at 868–869, 874 N.Y.S.2d 587).

In this case, the Court finds that *Miranda* warnings were first orally administered at the Gay residence before any claims of leniency were purportedly made. When Defendant was transported to CID, he was again administered his *Miranda* rights via the Custodial Interrogation Waiver form. Because the Court finds he was already in custody when he was first administered the warnings at his residence and waived such rights voluntarily and intelligently, the Court finds that it was not necessary to repeat the warnings at CID because his custody was continuous. *Id.* However, the Court finds that Defendant once again received his *Miranda* warning in writing, which Defendant acknowledged and waived.

Although *Black* informs the Court that, where deception by an officer is alleged to have resulted in an involuntary confession, the People have the burden beyond a reasonable doubt of establishing that the statements are the result of the Defendant's own choice, the Court finds that the Defendant has failed to establish a *prima facie* case of deception employed by the police in order to obtain his confession. Even if Defendant had established that police officers promised him leniency, however, the Court finds that the Defendant's will was not "overborne"

by such promises under the circumstances. *See, also, People v. Lyons,* 4 A.D. 3d 549, 771 N.Y.S. 585 (N.Y. App. Div. 2004) (detectives' assertion that everything would be alright if defendant told the truth was neither a promise that he would not be prosecuted nor a promise of lenient treatment); *People v. Baird,* 167 A.D.2d 693, 563 N.Y.S. 2d 274 (N.Y. App. Div. 1990).

Defendant also argues that his background, experience, and conduct are factors that weigh in favor of the Court holding that his consent was not given voluntarily, knowingly, and intelligently. *Mot.* at p. 4. In support of this argument, Defendant pointed out that he is a 25-year-old individual being interrogated while he was alone with officers. *Id.* The People argue that Defendant acknowledged and signed that he understood all the rights enumerated on the Custodial Interrogation Form, and that Defendant made a deliberate choice to waive his *Miranda* rights by choosing to provide oral and written statements and signing the Custodial Interrogation Form. *Opp'n.* at p. 7.

The Court agrees that consideration of Defendant's background is necessary to determine whether the statements he made, purportedly upon the promises of officers, was involuntary; however, the Court finds under the circumstances that Defendant was very well aware of the nature of the rights being abandoned and its consequences. Defendant is a 25-year-old individual, well into his adult years, who has two previous felony convictions: Burglary (as a 2nd Degree Felony)(CF0251-12) and Aggravated Assault (as a 3rd Degree Felony)(CF0052-16). Thus, Defendant is not so vulnerable or susceptible to such promise that he would be likely to make a false incriminating statement. *See, People v. Baird,* 563 N.Y.S.2d, 274, 167 A.D. 2d 693 (N.Y. App. Div. 1990). Defendant also signed the Custodial Interrogation Form indicating his understanding of the right he was waiving. Based on the totality of the circumstances, the Court finds that Defendant's waiver of his *Miranda* rights was voluntary even if officers made

promises of leniency in his prosecution, which the Court does not find to have occurred. Defendant's statements were voluntary; therefore, neither the statements nor the clothes seized at the residence will be suppressed.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's Motion to Suppress the physical evidence finding that the seizure was lawful, **DENIES** Defendant's Motion to Suppress statements made at the residence, and **DENIES** Defendant's Motion to Suppress statements made at CIS.

**SO ORDERED** this ___MAK 08 2021_____.

_____
**HONORABLE MARIA T. CENZON**
JUDGE, SUPERIOR COURT OF GUAM

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
AG, APD

Date: 3/8/21 Time: 3:53pm
Antonio Cruz
Deputy Clerk, Superior Court of Guam